Herbert **CHERNOV**, Plaintiff,

v.

**CITY OF HOLLYWOOD**, Defendant.

No. 91–7092–Civ.

United States District Court,
S.D. Florida.

March 31, 1993.

William R. Amlong, Fort Lauderdale, FL, for plaintiff.

Joseph H. Serota, Miami, FL, for defendant.

### FINAL SUMMARY JUDGMENT

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Motion For Summary Judgment And Incorporated Memorandum Of Law (DE 17) filed herein by the Defendant, City of Hollywood, and upon the Cross–Motion For Partial Summary Judgment (DE 20) filed herein

by the Plaintiff, Herbert Chernov. This Court has carefully considered the merits of said motions, and notes that in ruling on the aforementioned motions that this Court has considered only those matters permitted by Rule 56(c), Fed.R.Civ.P., and not arguments, proffers or representations by counsel of record.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

■ To summarize, the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

■ The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507 (11th Cir.1987). The standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Appellate Courts generally, therefore, will affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient

evidence to require submission of the case to a jury. *Anderson,* 477 U.S. at 252–256, 106 S.Ct. at 2512–14; *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607 (11th Cir.1987). The evidence of the non-movant is to be believed, however, and all justifiable inferences are to be drawn in their favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes,* 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580 (11th Cir.1986).

The basic facts in this case are not in dispute. The Plaintiff Herbert Chernov was the personnel director of the city of Hollywood. In July 1991, Plaintiff was advised that the city was displeased with his performance regarding a labor arbitration. Subsequently, he was relieved of his labor arbitration responsibilities. (DE 29 at 2–3)

In September, the city commission proposed a new budget which included a downgrading of Plaintiff's position and a reduction in his salary. In opposition, the Plaintiff wrote letters to the mayor and city commission, and attempted to appear before the city commission regarding enactment of the 1991 budget. (DE 29 at 3)

When the city manager subsequently received copies of Plaintiff's letters, he spoke with the Plaintiff and expressed his displeasure. As Plaintiff's immediate supervisor, the city manager believed Plaintiff violated proper channels by not bringing the dispute first to the city manager before contacting the commission. (DE 29 at 3)

Nevertheless, in November the Plaintiff appeared at the city commission meeting and obtained a speaker's card so that he could voice his objections to the 1991 budget item. The city manager, however, saw the Plaintiff and ordered him to leave. (DE 29 at 4)

Later that day, the city manager had a meeting with Plaintiff to discuss his recent behavior. At the meeting, the Plaintiff was terminated. Plaintiff was given a termination notice which referred to his inability to implement changes in the city's labor management policies, his unprofessional attitude, and his conduct over the past several days. (DE 29 at 4)

In mid-November, the Plaintiff had another meeting with city managers. The Plaintiff left, however, when his attorney was not permitted to cross-examine the city manager. Several weeks later, Plaintiff received a full evidentiary hearing regarding the whole matter pursuant to his request for unemployment benefits. In this hearing, Plaintiff's attorney was allowed to cross-examine all city witnesses. (DE 29 at 4)

Ultimately, Plaintiff filed a civil rights action for relief under Title 42 U.S.C. Section 1983. In his Complaint, the Plaintiff claims his First Amendment rights to speak, and to associate were violated. He also claims that he was denied a post-termination, "name-clearing" hearing under the Fourteenth Amendment, and that the 1991 budget item amounts to a bill of attainder.

■ In order to prevail in his civil rights action under Title 42 U.S.C. Section 1983, Plaintiff must establish that the Defendant deprived him of a constitutional right and that Defendant's actions were taken under color of state law. *Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir.1987).

Since this Court can resolve this case upon the first prong of the *Motes* test, however, this Court reserves ruling on whether Defendant's actions were taken under color of state law and shall proceed to examine whether Defendant deprived Plaintiff of his constitutional rights under the First and Fourteenth Amendments, and the bill of attainder clause. As the heart of this case lies in the Plaintiff's First Amendment claims, the Court shall address these allegations first.

The Supreme Court has held that "it has been settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). This protection, however, is not without limits. The Court has set limits because "the state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with the regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

Thus in *Pickering*, the Supreme Court set up a balancing test weighing the interests of public employees, as citizens, to free expression, and the interests of the state, as an employer, to promote "the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1735.

When applying this balancing test to "speech issues", a Court must determine as a threshold matter whether the speech addressed a matter of public concern. *See Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). This question must be answered in light of "the content, form, and context of a given statement, as revealed by the record as a whole." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.

■ In this case, the Plaintiff's "speech", as expressed through the content of his letters, does not address a matter of public concern. According to Plaintiff's own admission, his concerns focused solely upon his own salary and job responsibilities. (DE 29 at 3) Since Plaintiff's speech remains personal in nature, this Court finds no constitutional violation of the Plaintiff's right to free speech. As the Supreme Court has made clear:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to an employee's behavior.

*Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. In fact, Plaintiff concedes that he cannot support a First Amendment claim with the content of his personal letters. (DE 20 at 9)

This "public concern" test, however, does not apply to matters involving the right to associate. *See Hatcher v. Board of Education and Orphanage for Bibb County*, 809 F.2d 1546 (11th Cir.1987). In the association context, a court should apply the *Pickering* test directly. This Court, however, needs

first to determine if the Plaintiff's attempts to appear before the commission (i.e. the "delivery" of his letters and his appearance at the commission meeting) were in fact acts of "association" as Plaintiff asserts, or rather "speech" claims in disguise.

■ In *Berry v. Bailey,* 726 F.2d 670 (11th Cir.1984), the Eleventh Circuit devised a standard for "pinning down the essence" of a First Amendment claim. *Id.* at 673. The Court held:

> A person cannot be fired for his beliefs if they do not somehow manifest themselves ... [because an] employer would not know what the beliefs were. Such beliefs might manifest themselves in the person's speech or in conduct constituting symbolic speech; they might also appear in his political associations or religious activities. To determine what line of cases is most analogous to, and therefore instructive on, ... [his] claim, we look at the manner in which his "beliefs" became known to the outside world.

*Berry,* 726 F.2d at 673. Thus, when beliefs become known to the outside world through speech and accompanying action, rather than through those with whom one associates, the claim is actually based upon the right to speak, not the right to associate.

■ Under the *Berry* standard, the Plaintiff's attempts to appear before the commission do not implicate his First Amendment right of association. Plaintiff's beliefs can only become "known to the outside world" through his speech at the commission meeting, not through his association with the commission. Therefore, like the content of his letters, Plaintiff's attempts to appear before the commission are better characterized as "speech" claims, not "association" claims.

■ As "speech" claims, Plaintiff's allegations do not escape the "public concern" test of *Rankin.* Under that standard, given the content, form, and context of Plaintiff's attempts to speak to the commission, Plaintiff's claims must fail. The claims do not raise constitutional problems because this speech, like the content of his letters, remain focused upon his personal interests. Specifically, the "delivery" of his letters and his

appearance at the commission meeting were focused upon his personal job performance and salary. Accordingly, this court finds nothing constitutionally offensive in the fact that the commission held a meeting to obtain the views of the general public regarding the entire 1991 budget and, at the meeting, "speeches by insiders" were disallowed. *Schneider v. Indian River Community College Foundation,* 875 F.2d 1537, 1544 (11th Cir.1989).

■ It is important to remember that even though a public employee may feel that he has been retaliated against for exercising constitutional rights, this "does not automatically render the retaliatory action unconstitutional." *Ferrara v. Mills,* 781 F.2d 1508, 1513 (11th Cir.1986). It is not unconstitutional because the First Amendment right to free expression, although a critical right, is not an absolute right. *See Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Having disposed of Plaintiff's First Amendment allegations, the Court now turns to his remaining claims.

In the third count of Plaintiff's Amended Complaint, the Plaintiff seeks an injunction ordering a "name-clearing hearing" under the Fourteenth Amendment pursuant to the Eleventh Circuit's ruling in *Buxton v. Plant City,* 871 F.2d 1037 (11th Cir.1989).

In *Buxton,* the Court held that a public employer is required to provide an opportunity for a post-termination hearing when "stigmatizing information is made part of the public records, or otherwise published." *Id.* at 1036. A name clearing hearing, however, is only appropriate when the state imposes a stigma or other disability that forecloses the "freedom to take advantage of other employment opportunities." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Unless such a stigma seriously damages one's "standing and associations" in the community, the state's action will not implicate a "liberty interest" under the Fourteenth Amendment. *Id.* at 573, 92 S.Ct. at 2707.

■ In the present case, Plaintiff has not made a sufficient showing that the state's actions denied him his rights under the Four-

teenth Amendment. Injury to reputation by itself is not a protected "liberty" interest. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Plaintiff must demonstrate that the state imposed a "stigma" that forecloses his freedom to take advantage of other employment opportunities, or that seriously damages his associations in the community; and secondly that the state subsequently denied the Plaintiff a chance to remove this stigma and clear his name.

Plaintiff has failed to make a showing of either of these requirements. Plaintiff has not shown that the city has stigmatized his "honor or integrity", or accused him of any "dishonesty or immorality" that forecloses his future employment, *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707; nor has Plaintiff shown that he was denied an appropriate post termination hearing.

In this case, Plaintiff claims that his allegedly insubordinate contact with the commission was the "but for" cause of his dismissal. (DE 20 at 2) Giving the Plaintiff all justifiable inferences, the city's asserted basis for his dismissal was, indeed, his unprofessional attitude and "inappropriate" or allegedly insubordinate conduct over the last several days. (DE 6 at 4) However, a "critical element of a claimed invasion of a reputational liberty interest ... is the falsity of the government's asserted basis for the employment decision at issue." *Doe v. Garrett,* 903 F.2d 1455, 1463 (11th Cir.1990).

In this case, Plaintiff openly admits the facts that establish the truth of the basis for his dismissal. He admits that as department head, he reported directly to the city manager in accordance with the city charter. He admits that the city manager is in charge of all city personnel. He admits that he violated the chain of command by writing letters to the mayor and city commission regarding his claims, while not giving his supervisor an opportunity to read them first. He admits that he did not try first to discuss the matter with the city manager as his immediate supervisor. He admits that he knew that his superior was displeased with this type of conduct. He admits that despite this displeasure, he attempted to appear before the city commission meeting anyway, and that prior to this attempt, he had never appeared before the city commission without previously discussing the appearance with the city manager. (DE 29 at 2–4) These acts, by themselves, establish the charge of insubordination that the government asserts as a grounds for his dismissal.

In addition, and more importantly, Plaintiff also admits to having already received, not one, but two, post termination hearings. (DE 29 at 4) At these hearings, Plaintiff was provided with ample opportunity to tell his side of the story, and clear his name. This is all that the Constitution requires. The Due Process Clause merely requires that the "claimant be accorded notice of the charges against him and an opportunity to support his allegations by argument, however brief, and, if need be, by proof, however informal." *Campbell v. Pierce,* 741 F.2d 1342, 1345 (11th Cir.1984). In this case, Plaintiff admits receiving a notice of termination that stated the grounds for his dismissal (DE 29 at 4), and admits receiving "a full-blown evidentiary hearing" in regard to all aspects of this incident. (DE 29 at 4) Given these facts, there exists no genuine issue to submit to a jury as to Count Three.

Plaintiff's last claim alleges that the reduction in his salary and job responsibilities by the city commission amounts to a bill of attainder. He claims that the city of Hollywood subjected him to legislative punishment, without the benefits of a judicial trial, by enacting the 1991 budget which reduced the pay and scope of his position. The ordinance, he asserts, "impliedly determined his guilt (i.e., his allegedly poor performance) and punished him (i.e., by reducing his salary) without judicial trial". (DE 6 at 10) Plaintiff contends that this budget reduction is prohibited by Article I, Section 9, clause 3 and Section 10, clause 1 of the United States Constitution. Plaintiff's claim, however, is in error.

The Supreme Court has established a three-part test for determining whether a law penalizes an individual for bill of attainder purposes:

(1) whether the challenged statute falls within the historical meaning of legislative

punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a [legislative] intent to punish.

*Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632 (1984) (quoting *Nixon v. Administration of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)).

Under the *Nixon* test, the budget amendment does not constitute a bill of attainder. A downgrading of salary and responsibility in response to alleged poor job performance does not fall within the historical "pains and penalties" of a traditional bill of attainder. *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632 (1984). Secondly, the budget amendment furthers important nonpunitive purposes such as government efficiency, and conservation of city resources. Lastly, the Plaintiff has failed to show any legislative intent to punish. In response to what the city perceived to be poor results, the city commission merely reduced the responsibilities of the personnel manager position. With this reduction in responsibility, there came a logical reduction in salary. This type of management decision is not punishment, nor does it require a judicial trial of the Plaintiff. "Government offices could not function if every employment decision became a constitutional matter" *Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 1688, 75 L.Ed.2d 708 (1983). Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion For Summary Final Judgment (DE 17) be and the same is hereby **GRANTED.**

2) Plaintiff's Cross Motion For Partial Summary Judgment (DE 20) be and the same is hereby **DENIED.**

3) Summary Final Judgment be and the same is hereby entered in favor of Defendant, City of Hollywood, and against the Plaintiff, Herbert Chernov, and said Plaintiff shall take nothing by this action and said Defendant shall go hence without day.

4) To the extent not otherwise disposed of herein, all pending motions are denied as moot.

**DONE AND ORDERED.**